UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mary G. Yang,

    Plaintiff,

v.

Farmers New World Life Insurance Company,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 15-1514 ADM/FLN

Jason W Whitley, Esq., Novitzke, Gust, Sempf, Whitley & Bergmanis, Amery, WI, on behalf of Plaintiff.

Andrew R. Shedlock, Esq., Kutak Rock LLP, Minneapolis, MN, on behalf of Defendant.

## I. INTRODUCTION

On January 18, 2017, the undersigned United States District Judge heard oral argument on Plaintiff Mary G. Yang's ("Yang") and Defendant Farmers New World Life Insurance Company's ("Farmers") Motions for Summary Judgment [Docket Nos. 26, 36]. For the reasons set forth below, Yang's Motion is granted and Farmers' Motion is denied.

## II. BACKGROUND

On May 9, 2003, Yang's grandmother, May Yang (the "Insured"), signed a $150,000 20 Year Guarantee Level Term 2000 FNWL Life Insurance Policy (the "Policy") issued by Farmers. At issue in this case is the birthdate of the Insured. Yang contends that the Insured's birthdate is July 11, 1943, meaning that she was 59 years old when she purchased the Policy. Farmers, on the other hand, argues that the Insured's birthdate is May 27, 1933, meaning that the Insured was 69 years old at the time the Policy was purchased. If Farmers is correct, then the Insured was ineligible to purchase the Policy because her age exceeded the Policy's maximum age at the time of issue.

**A.  The Policy**

    **1.  Purchase**

On May 9, 2003, Farmers' independent agent, Daniel Stocker ("Stocker") met the Insured and several of her relatives at the Insured's residence to apply for the Policy.  First Whitley Aff. [Docket No. 44] Ex. A ("Stocker Dep.") 10:11–14.  Stocker completed the application, filling in the answers as he asked the questions to the Insured.  During this application process, Yang claims that Stocker was told that the Insured had two birthdates:  a May 27, 1933 birthdate that Yang contends was arbitrarily assigned by United States immigration officials, and a July 11, 1943 birthdate documented on the Insured's Laotian birth records.  Nao Yang Aff. [Docket No. 49] ¶ 8.

Nao Yang ("Nao"), the Insured's son-in-law, testified that Stocker was directly asked which birthdate should be placed on the application and Stocker responded that the July 11, 1943 date of birth should be used.  Id.; Vang Aff. [Docket No. 50] ¶ 7.

Stocker does not recall being told that the Insured had two different birthdates.  Stocker Dep. at 26:20–25.  Stocker also testified that in his fifteen years as a Farmers agent, he could not recall a situation where an insured had two different dates of birth.  Id. at 29:23–30:7.  Rather, Stocker testified that when he asked for the Insured's birthdate, she stated that her birthdate was July 11, 1943.  Id. at 21:12–16.  Stocker also recalled receiving supporting documents from Laos that showed a July 11, 1943 date of birth.  Id. at 12–16.

    **2.  Terms and Conditions**

The Policy has a maximum issue age limit of 60 years old, meaning only individuals under age 60 are eligible to purchase the Policy.  Consistent with Minnesota law, the Policy includes a misstatement of age or sex provision and an incontestability provision.  The Policy's

2

misstatement of age or sex provision provides, "[i]f the insured's age or sex was misstated, the amount payable will be that which the premiums paid would have purchased at the correct age or sex." Second Whitley Aff. [Docket No. 54] at 7. The incontestability provision states that Farmers "will not contest this policy after it has been in force for two years from the date of issue during the insured's lifetime except for nonpayment of premiums. This provision does not apply to any additional benefits for disability or accidental death." Id.

## B. The Insured Purchases the Unity Policy

In 2007, the Insured applied for a whole life insurance policy with Unity Financial Life Insurance Company ("Unity"). Klosowski Decl. [Docket No. 40] Ex. H. The Unity application reflects the Insured's birthdate as May 27, 1933, the date that Yang claims was arbitrarily assigned by United States immigration officials. Id.

## C. The Insured Dies and Beneficiaries Make Claims

The Insured died in Laos on February 11, 2014. Yang then made a claim to Farmers for death benefits under the Policy that had been purchased in 2003. On July 16, 2014, Farmers, in denying Yang's request, wrote:

> On the application for insurance dated 5/9/03, May Yang provided her date of birth as 7/11/43. The Certificate of Death shows the date of birth as 7/11/43 however Social Security Number verification indicates the correct date of birth for May Yang is 5/27/33. The policy provision for Misstatement of Age specifies in general that if the age of the insured has been misstated, the amount payable and every benefit accruing under this policy shall be such as the premiums paid would have purchased at the correct age according to the Company's published rates at the date of issue. Since her age was older then [sic] what was allowed by this product we have refunded all the premiums that were paid on the policy.
>
> If the correct date of birth is 7/11/43, we will need appropriate verification of date of birth in order to consider any additional principal sum payable.

Id. Ex. J. Farmers issued Yang a check for $7,404.17, refunding the Policy premiums with interest. Id.

Yang later provided Farmers a Laotian death certificate that showed the Insured was born on July 11, 1943. Tischer Aff. [Docket No. 48] Ex. A. In investigating Yang's claim, Farmers learned of the Unity policy purchased in 2007. Farmers also learned that when the Insured's beneficiary made a claim under the Unity policy, Unity was provided with a Laotian death certificate that showed the Insured's birthdate was May 27, 1933. Klosowski Decl. Ex. I. This birthdate was consistent with the birthdate provided on the Unity policy application, but inconsistent with the birthdate provided to Farmers.

Farmers also discovered that the Insured's passport, Certificate of Naturalization, and Minnesota Identification card each list the Insured's birthdate as May 27, 1933. Id. Exs. A, B, C. All three of those documents were either obtained or used after the Farmers Policy was issued.

### D. Two Different Birthdates

As an explanation for the two different birthdates, Yang claims that it was common practice for the United States to assign birthdates to immigrants arriving in the country without official identification papers. To support this claim, Nao, the Insured's son-in-law, testified that he was assigned an arbitrary birthdate when he arrived in the United States. Nao Yang Aff. ¶¶ 3, 4. While Nao stated that he eventually corrected his United States records to reflect his true birthdate and that he encouraged the Insured to do the same, she never followed through and continued to use her identifying documents with inaccurate information. Id. ¶ 6.

### E. The Lawsuit

Yang contends that the Insured's birthdate is July 11, 1943, and seeks full payment of the Policy's $150,000 benefit. Farmers asserts that, consistent with the Policy's misstatement of age or sex provision, Yang is only eligible for an amount which the premiums paid would have purchased if her correct birthdate of May 27, 1933 was provided. On February 20, 2015, after

Farmers refused to pay the $150,000 benefit, Yang filed this breach of contract case in Minnesota state court. Compl. [Docket No. 1-1]. Farmers removed the case to federal court under diversity jurisdiction, and both parties move for summary judgment.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). "[S]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

There seem to be three possible scenarios here: 1) the Insured's actual birthdate is July 11, 1943, 2) the Insured misstated her birthdate when securing the Policy and her birthdate is not July 11, 1943, or 3) the Insured purposefully misrepresented her birthdate to be eligible to purchase the Policy and her birthdate is not July 11, 1943. As explained below, under any

5

scenario, Yang is entitled to the full $150,000 benefit.

**B. Conflicting Evidence Regarding the Insured's Actual Birthdate**

Yang first argues that the evidence establishes that the Insured's true birthdate is July 11, 1943, the date submitted on the Policy application.  If Yang is correct, then the Insured is below the Policy's 60 year old issue age limit and Farmers must pay Yang the full $150,000 benefit. Farmers argues in response that the record includes credible evidence showing the Insured's birthdate is not July 11, 1943, and that this conflicting evidence presents a dispute of material fact that makes summary judgment inappropriate.

To support her argument, Yang relies upon three different categories of evidence:  1) the Insured's Laotian birth certificate and affidavit testimony swearing to its authenticity; 2) anecdotal testimony that it was common practice to assign arbitrary birthdates to immigrants arriving in the United States without documentation, and; 3) testimony that Stocker knew about the two birthdate confusion, and that it was his decision to use the July 11, 1943 date.

The value of the first category of evidence is critically impaired by the information and documents the Insured provided to Unity.  Most concerning is that the two Laotian death certificates in the record conflict was to when the Insured was born.  While both death certificates appear to be official Laotian documents, at least one must be incorrect.  This demonstrates that the Laotian documents in this case are not free from error, mistake, or something intentional, such as alteration.  Therefore, Yang's reliance upon the Laotian birth certificate, even with two affiants swearing to its authenticity, is not dispositive.

The second category of evidence also does not demonstrate conclusive proof of the Insured's birthdate.  Assuming Yang is correct and the Insured was assigned an arbitrary birthdate upon entry to the United States, it is troubling that no effort was made to correct the

6

inaccuracy. It is even more concerning that the arbitrary date was used to secure three pieces of official documentation—the Insured's passport, Certificate of Naturalization, and Minnesota Identification card. All three were either obtained or used after the Policy was purchased. Even if there is no explicit requirement to correct an inaccurate date of birth on a passport or naturalization documents, granting summary judgment on the basis of this anecdotal evidence requires the Court to credit Yang's explanation over the birthdate reflected in the official documents, an assessment which is prohibited on summary judgment. See United States v. Bame, 721 F.3d 1025, 1028 (8th Cir. 2013) ("[A]t the summary judgment state, the court is not permitted to weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." (quotations and citation omitted)).

Finally, Yang incorrectly argues that it is undisputed that Stocker was told about the two different birthdates. Stocker does not recall this happening, testifying that when he asked for the Insured's birthdate, he was simply provided with a Laotian birth certificate that the Insured's family said reflected her true birthdate. In his professional career, Stocker could not recall a time when someone said they had two different birthdates. This is significant because age is of primacy importance for life insurance policies, with rate structures and premium payouts being determined by the life expectancy of the insured. See 12 Couch on Insurance 3d § 179:13 (2016) ("Age is obviously a legitimate rating factor for life insurance"). Given the unlikelihood of someone claiming to have two different birthdates and the importance of the insured's age in a life insurance policy, a reasonable person would expect an agent like Stocker to recall if such a event occurred.

In sum, the conflicting evidence in this case prohibits summary judgment as to the Insured's true date of birth. This same prohibition applies to Yang's Motion as well as for

-->

Farmers', who argues that the record unequivocally shows the Insured's birthdate is May 27, 1933. Concluding that Farmers is correct requires crediting its evidence over the evidence submitted by Yang. Again, that is not permitted in analyzing a summary judgment motion.

**C. Misstatement of Age and Incontestability**

Farmers argues that the Policy's misstatement of age provision permits it to pay Yang $10,354.00, the benefit payable for a policy with similar premiums available to a 69 year old individual—the Insured's age when the Policy was issued if she was born on May 27, 1933. Farmers' argument is flawed for two reasons. First, the misstatement of age provision only applies if there is conclusive proof that the Insured's date of birth is not July 11, 1943. As explained above, there is a genuine issue of material fact as to the Insured's true date of birth.

More importantly, even if Farmers is correct and the Insured's birthdate is truly May 27, 1933, the Policy's incontestability provision prevents Farmers from applying the misstatement of age provision to award Yang reduced benefits under a different policy. This is true regardless of whether the Insured inadvertently misstated her birthdate or whether her date of birth was deliberately misrepresented. While neither Yang nor Farmers focused their argument on the incontestability provision, it is dispositve to this case.

The Policy's incontestability provision states that Farmers "will not contest this policy after it has been in force for two years from the date of issue during the insured's lifetime except for nonpayment of premiums. This provision does not apply to any additional benefits for disability or accidental death." Second Whitley Aff. at 7. Such a provision, which is required under Minn. Stat. § 61A.03, subd. 1(c), is designed to force an insurance company to investigate any potential errors or misrepresentations on insurance applications with reasonable diligence to prevent "an insurer from lulling the insured, by inaction, into fancied security during the time

when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured." 17 Couch on Insurance 3d § 240:5 (2016).  It is "settled that a principal effect of these clauses is to preclude the insurer from attempting to rescind the policy after the requisite contestability period has expired on the ground that the insured made misrepresentations in the application." Equitable Life Assurance Soc. of the U.S. v. Bell, 27 F.3d 1274, 1278 (7th Cir. 1994).

At the hearing, Farmers argued that phrase "during the insured's lifetime" signaled that the incontestability period expired upon the death of the Insured.  Put another way, Farmers argued that it was once again free to contest the validity of the Policy after the Insured died.  This interpretation is unpersuasive for two reasons.  First, Farmers' view conflicts with the essence of an incontestability provision.  Incontestability provisions "are in the nature of, and serve[ ] a similar purpose as, a statute of limitations." Allstate Life Ins. Co. v. Miller, 424 F.3d 1113, 1115 (11th Cir. 2005) (quotation marks omitted).  If Farmers is correct and errors and misrepresentations can again be challenged once the insured dies, then the impetus to investigate those issues during the lifetime of the insured disappears.  Second, substantiating error or misrepresentation in an application becomes more difficult as time passes—and is especially problematic once the insured dies.  Farmers' interpretation would allow insurance companies to challenge answers in a policy application that were provided decades ago.  As this case illuminates, memories about events that took place in the past fade over time, and the "time when the facts could best be ascertained and proved" is immediately after the policy is issued, not once the insured dies. 17 Couch on Insurance 3d § 240:5 (2016).

It matters not whether any misstatement of age was inadvertent or willful, as Minnesota does not bar enforcement of an incontestability provision on the grounds of fraudulent

procurement once the two-year contestability period has lapsed. Put simply, an incontestability provision "limit[s] the time within which the policy may be contested for fraudulent answers in its procurement." PHL Variable Ins. Co. v. Bank of Utah, 780 F.3d 863, 866 (8th Cir. 2015) (quoting Sellwood v. Equitable Life Ins. Co. of Iowa, 42 N.W.2d 346, 351 (Minn. 1950)). Other states agree. See, e.g., Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1061 (11th Cir. 2007) (noting that incontestability provisions under Ohio law does not provide any exceptions on account of fraud); Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1237 (11th Cir. 1995) (interpreting New Jersey law and stating that incontestability clauses "are generally construed as statute of limitations that, upon expiration, preclude all coverage defenses, including fraud").

Having concluded that the Policy is incontestable, the next issue is whether the Policy's incontestability and misstatement of age provisions can be read in harmony, or if the incontestability provision precludes the misstatement of age provision from taking effect. In New York Life Insurance Co. v. Hollender, 237 P.2d 510 (Cal. 1951), the Supreme Court of California held that an incontestability provision in a life insurance policy did not preclude the insurer from adjusting disability benefits to reflect the insured's true age. As Carlson v. New York Life Ins. Co., explained:

> The incontestability clause may not be read as an "insuring" or "coverage" clause. This clause merely provides that after the elapsed period of time, the insurer may not urge the defense that the policy was invalid in its inception, or thereafter, by reason of a condition broken. Such a clause does not alter the scope of coverage of a policy. . . . The incontestability clause pertained to the truth of the representations made in the application for insurance, and had no relevancy to the determination of the question of coverage.

222 N.E.2d 363, 371 (Ill. App. Ct. 1966).

In some cases, a misstatement of age provision that is invoked after the running of the contestability period will have the effect of diminishing, but not eliminating, the value of the

insurance policy. For example, in <u>Hollender</u>, the insured misstated his age on the insurance application, and the court held that the insurance company was permitted to change the face value of the policy consistent with the misstatement of age provision even though the contestability period had expired:

> It must be remembered that ordinarily the age of the applicant for insurance does not affect the acceptability of the risk, and admittedly plaintiff would have issued the policy as readily to defendant at age 47 as at age 45 years, with the age factor simply operating to fix the insurance premiums according to the established mortality tables. Accordingly, the age adjustment clause cannot be held to conflict with the incontestable clause but rather, as an independent provision of the insurance contract, it expresses the parties' agreement for the correction of errors consistent with their rights and obligations during the life of the policy.

237 P.2d at 82–83. A similar outcome was reached in the cases cited by Farmers. See <u>Byrd v. Conseco Life Ins. Co.</u>, No. 12-2455, 2014 WL 1658566, at *1 (D. Colo. April 25, 2014) (applying misstatement of age provision to reduce $100,000 benefit to approximately $57,000); <u>Wayside Farms, Inc. v. Hartford Life Ins. Co.</u>, 886 F.2d 139, 140 (6th Cir. 1989) (affirming reduction of benefit under the policy's mistaken age provision); <u>Margalit v. United Omaha Life Ins. Co.</u>, 837 F. Supp. 2d 1056, 1057 (C.D. Cal. 2012) (same).

Farmers argues that it has conclusively demonstrated that the Insured's birthdate is May 27, 1933. Thus, it contends that the Policy's misstatement of age provision authorizes a reduction in benefits to an amount the premiums that were paid would have purchased had the Insured's age been correctly stated. If Farmers could have established that the Insured's birthdate was May 27, 1933, "adjusting her age would take her outside the scope of the insurance policy altogether" because the Policy was only eligible to individuals under 70 years old. <u>Amica Life Ins. Co. v. Barbor</u>, 488 F. Supp. 2d 750, 759 (N.D. Ill. 2007). In <u>Amica</u>, the insured obtained a policy that was only available to individuals between the ages of 15 and 65. <u>Id.</u> at 752. In the policy application, the insured indicated her age was 64 years old. <u>Id.</u> After death,

the insurance company discovered documents showing the insured's birthdate to be 10 years earlier, making her 74 years old and ineligible for that specific life insurance policy. Id. at 753. The insurance company sought to award $0 to the decedent's beneficiaries, arguing that it was not voiding the policy but simply applying the policy's age adjustment provision.[1] Id. at 759. Since adjusting the insured's age placed her outside the age limit of the insurance policy, the court found that "invocation of the age adjustment clause is, in reality, a challenge to the validity of the policy due to a misstatement of the applicant." Id.  Because the policy's incontestability provision prohibited the insurer from contesting the validity of the policy, payment of the full policy benefit was ordered. Id. at 760.

Amica relied primarily upon Maxwell v. Cumberland Life Insurance Co., 748 P.2d 392, 396 (Idaho 1987), and Estate of Daniel v. Ford Life Insurance Co., 270 So. 2d 175, 177 (La. Ct. App. 1972). In Estate of Daniel, the insured misrepresented his age as being less than 65 for a policy with a maximum issue age limit of 65. 270 So. 2d at 175. The policy at issue in that case had both a misstatement of age and an incontestability provision. Id. at 176. The court reasoned that, "[i]n this case, we have an insured who, had he given his correct age, would not have been issued the policy. We view the defense tendered here as one which relates to the validity of the policy ab initio. Such a defense is precluded by the incontestability clause. . . ." Id. at 177.

There is no material distinction between this case and Amica. Adjusting the Insured's age to the age argued by Farmers would make the insured older than the Policy's maximum issue age limit at the time the Policy was purchased. Thus, by invoking the misstatement of age provision, Farmers is effectively challenging the validity of the Policy due to a misstatement in

---

[1] The age adjustment provision in Amica does not differ materially from the Policy's misstatement of age provision.

the application.[2]  This is a type of challenge the incontestability provision is designed to prohibit.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Mary G. Yang's Motion for Summary Judgment [Docket No. 26] is **GRANTED**, and Defendant Farmers New World Life Insurance Company's Motion for Summary Judgment [Docket No. 36] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 23, 2017.

---

[2] Farmers argues that Yang is entitled to benefits under a different policy.  This argument effectively concedes that the Policy purchased by the Insured is no longer valid.  This is consistent with the position Farmers took on July 16, 2014, when it refunded Yang the Policy premiums with interest.